UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ESSIE HINSON,

        Plaintiff,

v.                               CASE No. 8:04-CV-2258-T-TGW

JO ANNE B. BARNHART,
Commissioner of Social Security,

        Defendant.

_____

O R D E R

        The plaintiff in this case seeks judicial review of the denial of her claim for supplemental security income payments.[1]   Because the decision of the Commissioner of Social Security contains a critical error in the analysis of whether the plaintiff suffers from mental retardation, the decision will be reversed and the matter remanded for further proceedings.

I.

        The plaintiff, who was fifty-two years old at the time of the most recent administrative hearing, has a limited education and claims to be illiterate.  She has no relevant work experience.  After several unsuccessful

---

[1] The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Docs. 11, 12).

applications, the plaintiff filed her current claim for supplemental security income payments on March 17, 1999, alleging that she became disabled due to "two heart attacks and a stroke" (Tr. 140).  The claim was denied initially and upon reconsideration.

The plaintiff, at her request, then received a <u>de novo</u> hearing before an administrative law judge.  The law judge, on August 22, 2000, found that the plaintiff had severe impairments of chronic back pain and alcohol dependence (Tr. 54).  He concluded that these impairments restricted the plaintiff to a limited range of light work (<u>id</u>.).  However, he concluded that the plaintiff was not disabled (<u>id</u>.).  The plaintiff sought review of that decision from the Appeals Council.

In the meantime, the plaintiff filed a new application for supplemental security income benefits.  That application was granted on the ground that the plaintiff met the listing for an organic mental disorder (low intellectual functioning) (Tr. 101).  The Appeals Council vacated both the unfavorable decision and the favorable decision, and remanded the matter to a law judge for further consideration in accordance with its directions (Tr. 101-02).

After a further hearing, the same law judge found that the plaintiff suffers from depression, a history of alcohol abuse, back pain and low IQ (Tr. 18). He concluded that these impairments restricted the plaintiff to a limited range of light work (id.). However, based upon the testimony of a vocational expert, he determined that the plaintiff could perform jobs that exist in the national economy, such as produce sorter, bench assembler, and production line "sodderer"(sic) (Tr. 19). Accordingly, he decided that the plaintiff was not disabled. The Appeals Council let the decision of the law judge stand as the final decision of the Commissioner.

## II.

In order to be entitled to supplemental security income, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. 1382c(a)(3)(A). A "physical or mental impairment," under the terms of the Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 1382c(a)(3)(D).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence.  42 U.S.C. 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses.  Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971).  Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence.  Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).  Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled.  However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met.  Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

III.

The plaintiff raises in her memorandum  just one challenge to the law judge's decision.  She contends that the law judge erred in finding that she does not meet listing 12.05 B of Appendix 1.  See 20 C.F.R. Part 404, Subpart P, App. 1 (2000).

A condition listed in Appendix 1 is considered so severe that a plaintiff who meets, or equals, a listing is deemed disabled without regard to vocational considerations.  Wilkinson o/b/o Wilkinson v. Bowen, 847 F.2d 660, 662 (11th Cir. 1987).  The plaintiff bears the burden of showing that she meets, or equals, a listing.  McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987).  Moreover, "when a claimant contends that [s]he has an impairment meeting the listed impairments entitling h[er] to an adjudication of disability under regulation 404.1520(d), [s]he must present specific medical findings that meet the various tests listed under the description of the applicable impairment or, if in the alternative [s]he contends that [s]he has an impairment which is equal to one of the listed impairments, the claimant must present medical evidence which describes how the impairment has such an equivalency."  Bell v. Bowen, 796 F.2d 1350, 1353 (11th Cir. 1986).

As indicated, the plaintiff contends that she meets listing 12.05 B of Appendix 1.  That listing states:

12.05 *Mental Retardation*:  Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.

The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

. . .

B.  A valid verbal, performance, or full scale IQ of 59 or less; . . .

The plaintiff's IQ test results were a Verbal Scale IQ of 57, a Performance Scale IQ of 63, and a Full Scale IQ of 56 (Tr. 347).  Appendix 1 directs that, where more than one score is obtained, the lowest of them is to be used in conjunction with listing 12.05.  See App. 1, 12.00 D6c.  Here, the plaintiff's Full Scale IQ of 56 and Verbal Scale  IQ of 57 apparently meet the IQ criterion of listing 12.05 B.

It appears that the law judge concluded that the Full Scale IQ of 56 and the Verbal Scale IQ of 57 are not valid scores.  Thus, the law judge stated that Dr. Steven F. Wu, the psychologist who administered the IQ tests, "previously opined that the prior IQ scores were invalid due to exaggeration" (Tr. 14).  The law judge said further that "Dr. Wu's observations of the claimant are inconsistent with an IQ of 56 as well as the observations of Dr.

Peter Bursten" (id.), a psychologist who had examined the plaintiff in 1995

(Tr. 15, 16).[2]

The plaintiff points out that Dr. Wu did not say that the IQ scores

were invalid due to exaggeration.  To the contrary, he has stated that the IQ

scores are valid (Tr. 93; see also Tr. 347, 410, 477).  This is such a critical

mistake  that it plainly constitutes reversible error.

It is recognized that, as noted, the law judge also mentioned Dr.

Wu's and Dr. Bursten's observations as a reason for discounting the Full Scale

IQ of 56.  It is questionable whether those observations would be sufficient by

themselves to justify declaring the IQ scores invalid.  In all events, they cannot

save the decision in light of the law judge's fundamental mistake of thinking

that Dr. Wu "had previously opined that the prior IQ scores were invalid."

There simply is no way of knowing how the law judge would have decided this

case, and explained his decision, if he analyzed the claim with the

understanding that Dr. Wu considered the IQ scores valid.

The plaintiff, of course, in order to meet listing 12.05 B had to

demonstrate not only that she had an IQ score of 59 or less, but also that she

satisfied other criteria.  Thus, in Crayton v. Callahan, 120 F.3d 1217, 1219

---

[2]It is noted that the Commissioner cites to this report in her memorandum.  However, the citation to pages 740-742 of the transcript are far beyond the 571-page transcript filed with the court.

(11th Cir. 1997) (emphasis added), the court said that, "[t]o be considered for disability benefits under section 12.05, a claimant must <u>at</u> <u>least</u> (1) have significantly subaverage general intellectual functioning; (2) have deficits in adaptive behavior; and (3) have manifested deficits in adaptive behavior before age 22." While <u>Crayton</u> was decided before the recent amendment to listing 12.05, it essentially reflects the elements of that listing. These requirements, moreover, are in addition to the criteria in paragraphs A through D.

The plaintiff may well be unable to show that, even if her IQ scores of 59 or less are valid, she did not suffer from that condition before age 22. The record indicates, among other things, that the plaintiff may have attended school to the ninth grade, that she was intellectually able to perform some work, that she has a lengthy history of alcohol abuse, and that she suffered a fall after age 22 which rendered her unconscious. The law judge, however, did not appear to conclude that the plaintiff's intellectual deficiency did not relate back to the period before age 22. And, if he intended to do so, he failed to provide any cogent explanation for that conclusion.

As the plaintiff points out, the Eleventh Circuit has held that there is a rebuttable presumption that IQ test results are fairly constant throughout life, so that a low IQ score at a later age is presumed to be present before age 22. <u>Hodges</u> v. <u>Barnhart</u>, 276 F.3d 1265, 1268-69 (11th Cir. 2001). The failure

to apply such a presumption is error. Id. at 1269. The law judge did not mention such a presumption in this case. Consequently, the law judge's error in evaluating the validity of the IQ scores cannot be remedied on the ground that, assuming the IQ scores were valid, the plaintiff failed to show that they reflected her condition before age 22.

Finally, it is noted that the law judge requested that the plaintiff be examined by a neuropsychologist, but that request was denied administratively. Under the facts of this case, the law judge's request was clearly reasonable. On remand, strong consideration should be given to that request.

## IV.

For the foregoing reasons, the decision of the Commissioner is fundamentally flawed. Therefore, the decision is hereby REVERSED, and the matter is REMANDED to the Commissioner for further proceedings. The Clerk shall enter judgment accordingly and close this case.

DONE and ORDERED at Tampa, Florida, this 23rd day of November, 2005.

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE